EILEEN M. DECKER
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division
JONATHAN B. KLINCK (CBN 119926)
Assistant United States Attorney
     Federal Building, Suite 7516
     300 North Los Angeles Street
     Los Angeles, California 90012
     Telephone: (213) 894-8561
     Facsimile: (213) 894-7819
     E-mail: jon.klinck@usdoj.gov

Attorneys for Real Party in
Interest United States of America

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| The Roman Catholic Bishop of Monterrey,<br><br>        Plaintiff,<br><br>        v.<br><br>Salomon Cota, et al.,<br><br>        Defendants. | No. 2:15-cv-08065 JFW (RAOx)<br><br>Hearing Date:  November 23, 2015<br>Hearing Time:  1:30 p.m.<br>Ctrm:         16<br><br>The Honorable John F. Walter |

1.    REAL PARTY IN INTEREST UNITED STATES' NOTICE OF MOTION

       AND MOTION TO DISMISS ACTION AND OPPOSITION TO MOTION

       FOR LEAVE TO FILE COMPLAINT IN INTERVENTION;

2.    MEMORANDUM OF POINTS AND AUTHORITIES;

3.    DECLARATION OF AMY DUTSCHKE.

# **TABLE OF CONTENTS**

DESCRIPTION                                                                    PAGE

I.     INTRODUCTION ................................................................................1

II.    STATEMENT OF FACTS ....................................................................2

III.   ARGUMENT........................................................................................4

      A.    The Action Should Be Dismissed Because the United
             States Has Not Waived its Sovereign Immunity............................4

      B.    The Complaint in Intervention Fails to State a
             Claim for Which Relief Can be Granted........................................5

      C.    The Action is Barred by Statute of Limitations ............................7

      D.    The Action is Barred by the Equitable Doctrine of Laches ..........9

      E.    Intervenor Lacks Standing to Maintain This Action...................10

      F.    The Motion for Leave to File a Complaint in
             Intervention Should Be Denied as Untimely ..............................12

IV.    CONCLUSION...................................................................................13

# TABLE OF AUTHORITIES

DESCRIPTION                                                                                    PAGE

**FEDERAL CASES**

Ashcroft v. Iqbal,
    556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ..............................5

Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.,
    603 F.3d 1133, 1139 (9th Cir. 2010) ...................................................................10

Badger v. Badger,
    69 U.S. 87, 94, 2 Wall. 87, 94, 17 L. Ed. 836 (1865)............................................9

Baker v. Carr,
    369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) .....................................11

Balistreri v. Pacifica Police Dep't,
    901 F.2d 696, 699 (9th Cir. 1990) .........................................................................5

Bd. of Natural Res. v. Brown,
    992 F.2d 937, 945 (9th Cir. 1992) .......................................................................11

Bell Atl. Corp. v. Twombly,
    550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ............................5

Big Lagoon Rancheria v. California,
    789 F.3d 947 (9th Cir. 2015) ...............................................................................10

Boone v. Mech. Specialties Co.,
    609 F.2d 956, 958-60 (9th Cir. 1979) ....................................................................9

Bull HN Information Systems v. Hutson,
    5 F.Supp.2d 68, 70 (D. Mass 1998)........................................................................6

Carlson v. Tulalip Tribes of Wash.,
    510 F.2d 1337, 1339 (9th Cir 1975) .......................................................................4

Carr v. United States,
    98 U.S. 433, 437, 25 L.Ed. 209 (1878) ..................................................................4

Church & Dwight Co., Inc. v. Mayer Lab., Inc.,
    No. C-10-4429 EMC, 2011 WL 1225912, at *21, 2011 U.S. Dist. LEXIS
    35969, at *71-72 (N.D. Cal. Apr. 1, 2011).............................................................9

City of Sherrill v. Oneida Indian Nation,
    544 U.S. 197, 199, 125 S.Ct. 1478, 161 L.Ed.2d 386 (2005) ...............................9

Cline v. Brusett,
    661 F.2d 108, 110 (9th Cir. 1981) ..........................................................................7

Defenders of Wildlife v. Perciasepe,
    714 F.3d 1317, 1323 (D.C. Cir. 2013)..................................................................11

ii

Del. State Coll. v. Ricks,
    449 U.S. 250, 258 (1980) ..................................................................... 8

Dunn & Black v. United States,
    492 F.3d 1084, 1088 (9th Cir. 2007) ..................................................... 4

Erickson v. Pardus,
    551 U.S. 89, 93-94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) .......... 6

Galliher v. Cadwell,
    145 U.S. 368, 374-75, 12 S.Ct. 873, 36 L.Ed. 738 (1892) .................... 9

Gilbert v. Da Grossa,
    756 F.2d 1455, 1458 (9th Cir. 1985) ..................................................... 4

Hishon v. King & Spalding,
    467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984) .................... 6

Internet Specialties West, Inc. v. Milon-Digiorgio Enters.,
    559 F.3d 985, 989-993 (9th Cir. 2009) ................................................. 9

Jarrow Formulas Inc. v. Nutrition Now, Inc.,
    304 F3d 829, 838(9th Cir 2002) ........................................................... 9

Lujan v. Defenders of Wildlife,
    504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ........ 11

McGuire v. United States,
    550 F.3d 903, 910 (9th Cir. 2008) ......................................................... 4

Minnesota v. United States,
    305 U.S. 382, 386-387, 59 S.Ct. 292, 83 L.Ed.235 (1939) .................... 4

Papasan v. Allain,
    478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) ............... 6

Parks Sch. of Bus. v. Symington,
    51 F.3d 1480, 1484 (9th Cir. 1995) ....................................................... 6

Shiny Rock Min. Corp. v. United States,
    906 F.2d 1362, 1364-65 (9th Cir. 1990) ............................................... 7

Simon v. Eastern Ky. Welfare Rights Organization,
    426 U.S. 26, 41-42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) ................ 11

Sisseton-Wahpeton Sioux Tribe v. United States,
    895 F.2d 588, 592 (9th Cir. 1990) ......................................................... 8

Soriano v. United States,
    352 U.S. 270, 276, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1957) .................. 8

Sprewell v. Golden State Warriors,
    266 F.3d 979, 988 (9th Cir. 2001) ......................................................... 6

iii

*Stanley v. Schwalby,*
162 U.S. 255, 272 S.Ct. 754, 40 L.Ed. 960 (1896) .......................... 4

*United States v. Alcan Aluminum, Inc.,*
25 F.3d 1174, 1181-82 (3rd Cir. 1994) ........................................ 12

*United States v. British American Tobacco Australia Services, Ltd.,*
437 F.3d 1235, 1238-39 (DC Cir. 2006) ...................................... 12

*United States v. City of Tacoma,*
332 F.3d 574, 579-580 (9th Cir. 2003) ........................................ 4

*United States v. Mottaz,*
476 U.S. 834, 841, 101 S.Ct. 498, 66 L.Ed.2d 431 (1986) ................... 8

*United States v. Ritchie,*
342 F.3d 903, 907-08 (9th Cir. 2003) .......................................... 6

*United States v. Shaw,*
309 U.S. 495, 500-01, 60 S.Ct. 659, 84 L.Ed. 888(1940) .................... 5

*United States v. Sherwood,*
312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) ...................... 8

*Utah Power & Light Co. v. United States,*
243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791 (1917) ...................... 5

*Van Buskirk v. Cable News Network, Inc.,*
284 F.3d 977, 980 (9th Cir. 2002) ............................................ 6

*Warth v. Seldin,*
422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed. 343 (1975) .................... 11

*Yniguez v. State of Arizona,*
939 F.2d 727, 731 (9th Cir. 1991) ............................................ 12

**FEDERAL STATUTES**

Art. III, § 2, cl. I ................................................................. 10

F.R.Civ.P. 24(b)(1) ................................................................ v

Fed. R. Civ. P. 8(a)(2) ............................................................ 5

**OTHER AUTHORITIES**

Wright, Miller & Marcus, 12 *Federal Practice and Procedure* § 3033 ............ 6

iv

**NOTICE OF MOTION AND MOTION TO DISMISS ACTION AND OPPOSITION TO MOTION FOR LEAVE TO FILE COMPLAINT IN INTERVENTION**

PLEASE TAKE NOTICE that, on November 23, 2015, at 1:30 p.m., or as soon thereafter as they may be heard, Real Party in Interest United States of America will, and hereby does, move this Court for an order dismissing this action with prejudice and denying Intervenor Save the Valley, LLC's motion for an order allowing leave to file a complaint in intervention. This motion will be made in Courtroom 16 of the Spring Street Courthouse, before the Honorable John F. Walter, United States District Judge, located at 312 N. Spring Street, Los Angeles, CA 90012.

Real Party in Interest United States brings the motion on the following grounds: (1) the United States is the owner of the real property the uses of which Intervenor seeks to affect by its proposed complaint in intervention for declaratory and injunctive relief, and the United States has sovereign immunity against such action; (2) the proposed complaint in intervention fails to state a claim to which relief can be granted; (3) the proposed complaint in intervention is barred by the statute of limitations; (4) the proposed complaint in intervention is barred by the equitable doctrine of laches; (5) the Intervenor lacks standing and (6) the motion for leave to file a complaint in intervention should be denied pursuant to F.R.Civ.P. 24(b)(1) because the motion is not timely and the proposed complaint in intervention suffers from the above defects and has no reasonable chance for success.

This motion is based upon this Notice, the attached Memorandum of Points and Authorities and Declaration of Amy Dutschke, and all pleadings, records, and other documents on file with the Court in this action, and upon such oral argument as may be presented at the hearing of this motion.

This motion is made following the attempted conference of counsel pursuant to Local Rule 7-3 which was initiated by email from counsel for Real Party in Interest to

///

counsel for Intervenor on October 16, 2015 requesting discussion of the issues raised by this motion.  No response was received by the time this filing was required by F.R.Civ.P. 81(c).


Dated: October 21, 2015                    Respectfully submitted,

                                           EILEEN M. DECKER
                                           United States Attorney
                                           LEON W. WEIDMAN
                                           Assistant United States Attorney
                                           Chief, Civil Division


                                                /s/
                                           JONATHAN B. KLINCK
                                           Assistant United States Attorney

                                           Attorneys for Real Party in Interest
                                           United States

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This is the second time Intervenor Save the Valley LLC ("STV") has come before this Court.  The first time it came directly when it filed an action against the Santa Ynez Band of Chumash Indians and certain of its tribal members, <u>Save the Valley LLC v. The Santa Ynez Band of Chumash Indians, et al.,</u> CV 15-02463 RGK (MANx) ("Save the Valley I").  Like the instant action, Save the Valley I sought to affect and concerned a parcel of real property located on an Indian Reservation which is owned by the United States in trust for the Indians of the Santa Ynez Band of Chumash Mission Indians of the Santa Ynez Reservation, California ("Tribe").  A copy of the complaint in Save the Valley I is attached hereto as Exhibit A.  Save the Valley I was dismissed by the Court as described in the Civil Minutes dated July 2, 2015 (Dkt. #31), a copy of which Civil Minutes is attached hereto as Exhibit B.  STV did not appeal the dismissal of Save the Valley I.

For its second effort, STV filed a notice of motion for leave to file a complaint in intervention in the instant action, which was filed in Santa Barbara County Superior Court over a century ago, <u>The Roman Catholic Bishop of Monterey, Plaintiff, vs. Salomon Cota, et al, Defendants.</u>  Santa Barbara Superior Court Case No. 3926.  ("Save the Valley II").  A copy of the proposed complaint in intervention in Save the Valley II is attached hereto as Exhibit C.[1]  As shown by the documents attached as Exhibit 1 to the proposed complaint in intervention in Save the Valley II, that case ended in a judgment entered on March 31, 1906.  It would be an understatement to say that Save the Valley II is an old case.  A copy of SVT's motion for leave to file a complaint in intervention in Save the Valley II is attached hereto as Exhibit D.

_____

[1] Real Party in Interest removed the instant action on October 14, 2015, and will file an indexed set of documents from Santa Barbara Superior Court Case No. 3926 as soon as those documents are available, but the Santa Barbara Superior Court clerk has advised that the records are located off-site and will take four to six weeks to obtain, if they are indeed available for copying.

1        Both the complaint in Save the Valley I and the proposed complaint in

2  intervention in Save the Valley II seek declaratory and injunctive relief to limit the

3  Tribe's use of certain portions of its Reservation:  to limit those uses to domestic

4  purposes only, and to prevent the Tribe's current and future use of that land for casino

5  and hotel uses.[2]  Save the Valley I complaint, Exhibit A, ¶ 7, prayer for relief ¶ 1-2;

6  Exhibit C, ¶ ¶ 1and 6, prayer for relief ¶ ¶ 1 and 2.

7  **II.   STATEMENT OF FACTS**

8        The Tribe's Reservation is located within present-day Santa Barbara County.  The

9  Reservation was originally part of a larger Spanish land grant called Canada de Los

10  Pinos, or "College Rancho." This land grant was patented by the United States in 1861

11  to the Roman Catholic Bishop of Monterey following California's admission into the

12  United States. Thereafter, in 1882, the land was partitioned and divided between the

13  Bishop of Monterey and the Archbishop of San Francisco. The partitioned lands held by

14  the Bishop of Monterey are the lands upon which the Tribe now operates its casino,

15  known to the Bureau of Indian Affairs as Tract 5061.  See Declaration of Amy Dutschke

16  ("Dutschke Decl.") attached hereto ¶ ¶ 2-6 and the Title Status Report (showing the

17  chain of title for Tract 5061) and the Land Status Map attached thereto as Exhibits A and

18  B.  Tract 5061 is held in trust by the United States for the use of the Tribe.  Id.

19      The Bishop of Monterey initiated a quiet title action ("Save the Valley II") in

20  state court in or around 1897, seeking to settle potential property interest claims the

21  Indian residents may have had in the property. The state court issued a judgment in 1906,

22  in which it confirmed that the Bishop was the fee simple owner of both the property and

23

24              [2] Intervenor contests that the portion of the real estate in question is in fact trust

     land held by the United States and contends, alternatively, that it is fee land held by the

25  United States or by members of the Tribe.  Save the Valley I Complaint, prayer for

     relief ¶¶  1(a), 1(b); proposed complaint in intervention in Save the Valley II, ¶  23.  Real

26  Party in Interest has attached the Declaration of Amy Dutschke, the Regional Director

     for the Bureau of Indian Affairs-Pacific Regional Office ("Dutschke Decl."), which

27  proves:  (1) the Tribe is federally recognized; (2) the land in question, Tract  No. 5061, is

     held in trust by the United States for the benefit of the Tribe.  Dutschke Decl. ¶ ¶  2 and

28  3.

the water rights to Zanja de Cota Creek, but such ownership was subject to the right of occupancy by the Indian defendants, including the right to water from the Creek consistent with their right of occupancy.

Following the issuance of the judgment in 1906, the Bishop executed a deed conveying the property to the United States for the benefit of the Tribe, subject to certain conditions and restrictions. Dutschke Decl. ¶ 6, Exhibit A.  The 1906 deed retained an easement across the property to allow the Bishop and his successors to access the waters from Zanja de Cota Creek, including the right to cross the property with pipes, flumes, ditches or other conduits in order to ensure access. The 1906 deed also granted the Bishop and his successors a right to seek reversion of the conveyance in the event that the Tribe's members or their descendants completely abandoned the property.

The Federal government consistently treated the property as the Tribe's reservation in the years following the 1906 transaction. This is demonstrated as early as 1909, when the Bureau of Indian Affairs ("BIA") evaluated the question of whether the reservation was "Indian Country" for purposes of enforcing liquor laws. The BIA concluded it was, given the lands status as a reservation for the Tribe.  This is shown by the letter dated April 4, 1909 letter from the Department of the Interior to the Superintendent of the Santa Ynez Indian School.   A copy of the 1909 letter is attached hereto as Exhibit E.

In an effort to clear title to remove the retained interests identified in the 1906 deed so as to ensure a permanent homeland for the Tribe into perpetuity, the BIA worked to obtain the reversionary interests held by the Bishop and his successors.  To that end, in 1935, the Bishop of Los Angeles as well as the San Diego and Petroleum Securities Company, both successors in interest to the reversionary interests granted in the 1906 deed, conveyed all of their interest in the property "for the establishment of a permanent Indian Reservation for the perpetual use and occupancy of the [Tribe]." Dutschke Decl. ¶¶ 7-8, Exhibits D and E.  The Deeds retained no easements or rights of reversion; instead, they granted all of their interests in the property, including any remaining rights

they held to the waters of the Creek. These Deeds were recorded in 1938 and formally accepted by the BIA in 1941.  This is shown by the 1940 Opinion of the Solicitor of the Department, a copy of which is attached hereto as Exhibit F.

## III.   ARGUMENT

### A.   The Action Should Be Dismissed Because the United States Has Not Waived Its Sovereign Immunity

"A proceeding against property in which the United States has an interest is a suit against the United States." Minnesota v. United States, 305 U.S. 382, 386-387, 59 S.Ct. 292, 83 L.Ed.235 (1939); Carr v. United States, 98 U.S. 433, 437, 25 L.Ed. 209 (1878); Stanley v. Schwalby, 162 U.S. 255, 272 S.Ct. 754, 40 L.Ed. 960 (1896). See also United States v. City of Tacoma, 332 F.3d 574, 579-580 (9th Cir. 2003) (The United States had standing to challenge city's condemnation proceeding against restricted Indian land due to role as trustee and its interest in protecting Indian lands); Carlson v. Tulalip Tribes of Wash., 510 F.2d 1337, 1339 (9th Cir 1975) ("the United States is a necessary party to any action in which the relief sought might interfere with its obligation to protect Indian lands against alienation").

"It is well settled that the United States is a sovereign, and, as such, is immune from suit unless it has expressly waived such immunity and consented to be sued. Such waiver cannot be implied, but must be unequivocally expressed. Where a suit has not been consented to by the United States, dismissal of the action is required . . . . [because] the existence of such consent is a prerequisite for jurisdiction." McGuire v. United States, 550 F.3d 903, 910 (9th Cir. 2008) (citing Gilbert v. Da Grossa, 756 F.2d 1455, 1458 (9th Cir. 1985)). "Unless [plaintiff] 'satisfies the burden of establishing that its action falls within an unequivocally expressed waiver of sovereign immunity by Congress, it must be dismissed.'" Id. (quoting Dunn & Black v. United States, 492 F.3d 1084, 1088 (9th Cir. 2007).

Contrary to Intervenor's contention, no federal officer can confer jurisdiction over the United States.  "Without specific statutory consent, no suit may be brought against

4

the United States.  No officer by his action can confer jurisdiction."  <u>United States v.</u> <u>Shaw</u>, 309 U.S. 495, 500-01, 60 S.Ct. 659, 84 L.Ed. 888(1940). Similarly, no agreement made with a federal officer can raise estoppel against the United States.  <u>Utah Power &</u> <u>Light Co. v. United States</u>, 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791 (1917). No matter what Mr. Lucius did or did not do in 1906, his actions or omissions to act could not affect the sovereign immunity of the United States.  Intervenor identifies no statute waiving the United States' sovereign immunity to allow its suit to proceed because none exists.  For this reason alone the action should be dismissed and the motion for leave to file a complaint in intervention should be denied.

## B.    The Complaint in Intervention Fails To State a Claim for Which Relief Can be Granted

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." <u>Balistreri v. Pacifica Police</u> <u>Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting <u>Bell Atl. Corp. v.</u> <u>Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" <u>Id</u>. (quoting <u>Twombly</u>, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u> at 679.  Ultimately, the inquiry focuses on the interplay between

5

1    the factual allegations of the complaint and the dispositive issues of law in the action.

2    See Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59

3    (1984).

4         In making this context-specific evaluation, this court must construe the complaint

5    in the light most favorable to the plaintiff and accept as true the factual allegations of the

6    complaint. Erickson v. Pardus, 551 U.S. 89, 93-94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081

7    (2007). This rule does not apply to "'a legal conclusion couched as a factual allegation,'"

8    Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) quoted in

9    Twombly, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to

10   judicial notice" or to material attached to or incorporated by reference into the complaint.

11   Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). A court's

12   consideration of documents attached to a complaint or incorporated by reference or

13   matter of judicial notice will not convert a motion to dismiss into a motion for summary

14   judgment. United States v. Ritchie, 342 F.3d 903, 907-08 (9th Cir. 2003); Parks Sch. of

15   Bus. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995); compare Van Buskirk v. Cable

16   News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002) (noting that even though court

17   may look beyond pleadings on motion to dismiss, generally court is limited to face of the

18   complaint on 12(b)(6) motion).

19        Here, there are two causes of action alleged in STV's proposed complaint in

20   intervention, the First Cause of Action for Declaratory Relief and the Second Cause of

21   Action for Injunctive Relief, based on a claim that STV can enforce a 1906 civil

22   judgment to which it was not a party.  Complaint in Intervention ¶ 7.  However, it is

23   hornbook law that strangers to a judgment cannot enforce the judgment, and this

24   exclusion covers STV.  Wright, Miller & Marcus, 12 Federal Practice and Procedure

25   § 3033(stating that ordinarily a judgment will only be enforced against a party, citing

26   F.R.Civ.P. 71), cited in Bull HN Information Systems v. Hutson, 5 F.Supp.2d 68, 70 (D.

27   Mass 1998).

28   ///

Moreover, that 1906 judgment was overtaken by subsequent deeds and so there is no judgment left to enforce. Judgments in quiet title actions determine property ownership rights as between the parties to that action and the 1906 judgment confirmed the Bishop's fee simple ownership rights.  But immediately following the issuance of the 1906 judgment, the Bishop conveyed his fee simple ownership rights to the United States for the benefit of the Tribe. As a part of that conveyance, the Bishop reserved the right to seek a reversion of the transfer in the event the property was completely abandoned.  The Bishop also reserved an easement across the property to allow him to access the waters of the Creek. The Bishop's successors to these retained interests later conveyed all right title and interest they had acquired from the Bishop to the United States in 1935 to establish "a permanent Indian reservation for the perpetual use and occupancy" of the Tribe.  Dutschke Decl. Exhibits D and E.

The 1906 judgment, therefore, only resolved the question of property ownership as between the Bishop and the individual Indian defendants, and confirmed the Bishop's fee simple ownership of the property and the waters of the Creek.  Whatever legal effect the 1906 judgment had concerning the use of the property was overtaken by subsequent conveyances in 1906 and 1935, in which the Bishop and his successors conveyed all of their interests to the property and the waters of the Creek to the United States for the benefit of the Tribe.  There is simply no 1906 judgment left to enforce and thus STV's entire suit must be dismissed.

## C.   The Action is Barred by the Statute of Limitations

"[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a).  "Under federal law, a cause of action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action." Cline v. Brusett, 661 F.2d 108, 110 (9th Cir. 1981); Shiny Rock Min. Corp. v. United States, 906 F.2d 1362, 1364-65 (9th Cir. 1990).

///

The United States is immune from suit unless Congress waives its immunity, and the terms of its waiver define the federal court's jurisdiction. United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); Soriano v. United States, 352 U.S. 270, 276, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1957). Because 28 U.S.C. § 2401(a) "constitutes a condition on the waiver of sovereign immunity," United States v. Mottaz, 476 U.S. 834, 841, 101 S.Ct. 498, 66 L.Ed.2d 431 (1986) (quotation omitted), it is a jurisdictional requirement that the courts construe strictly. See, e.g., Sisseton-Wahpeton Sioux Tribe v. United States, 895 F.2d 588, 592 (9th Cir. 1990). The proper focus for statute-of-limitations purposes is upon "the time of the [defendant's] acts." Del. State Coll. v. Ricks, 449 U.S. 250, 258 (1980). A plaintiff does not have to possess actual knowledge in order for the cause of action to accrue. Shiny Rock, 906 F.2d at 1364-65; Sisseton-Wahpeton, 895 F.2d at 594.

STV contends that the United States' sovereign immunity was waived via the participation of BIA Indian Agent Lucius Wright in the state court proceeding that commenced and concluded over a century ago. Even if a federal employee could waive the United States' sovereign immunity (and they cannot do so as shown above) the time for STV to intervene to enforce the 1906 judgment has long since passed. STV acknowledges that the judgment and subsequent conveyances establishing the Reservation were recorded with the Santa Barbara County Recorder's Office and thus SVT had at least constructive notice of them for over a century. The United States' treatment of the Tribe as a federally recognized Indian tribe with jurisdiction over its Reservation has long been a matter of public record, such that any alleged inconsistent use of the Reservation by the Tribe certainly occurred more than six years ago.

For example, as "neighbors" of the Reservation, STV's members were certainly on notice that the Tribe has used its Reservation for commercial purposes, including for gaming purposes for more than two decades. Certainly by 2000, these "neighbors" and "adjacent property owners" were aware that the Tribe entered into a gaming compact with the State of California. 65 Fed. Reg. 31189 (May 16, 2000), and thereafter

8

1    constructed and opened its existing casino facility, which has been in operation for more

2    than a decade.  STV's late discovery of the judgment and subsequent transactions

3    recorded in the County Recorder's Office do not provide a basis to seek declaratory or

4    injunctive relief that the Tribe is acting in contravention to that judgment.  STV had

5    constructive notice of the judgment and subsequent conveyances.  Thus, even if STV's

6    claims had merit, they would have had to have been brought decades ago.

7        **D.      The Action Is Barred By the Equitable Doctrine of Laches**

8            STV's two causes of action both sound in equity.  It is well established that laches,

9    a doctrine focused on one side's inaction and the other's legitimate reliance, may bar

10   long-dormant claims for equitable relief. See, e.g., Badger v. Badger, 69 U.S. 87, 94, 2

11   Wall. 87, 94, 17 L. Ed. 836 (1865) ("[C]ourts of equity act upon their own inherent

12   doctrine of discouraging, for the peace of society, antiquated demands, refuse to interfere

13   where there has been gross laches in prosecuting the claim, or long acquiescence in the

14   assertion of adverse rights." City of Sherrill v. Oneida Indian Nation, 544 U.S. 197, 199,

15   125 S.Ct. 1478, 161 L.Ed.2d 386 (2005).  "Laches is not . . . a mere matter of time, but

16   principally a question of the inequity of permitting the claim to be enforced – an inequity

17   founded upon some change in the condition or relations of the property or the parties."

18   Galliher v. Cadwell, 145 U.S. 368, 374-75, 12 S.Ct. 873, 36 L.Ed. 738 (1892).

19           "Laches is an equitable time limitation on a party's right to bring suit." Boone v.

20   Mech. Specialties Co., 609 F.2d 956, 958-60 (9th Cir. 1979). It works to penalize

21   inexcusable dilatory behavior by preventing a plaintiff from pursuing stale claims. See

22   Jarrow Formulas Inc. v. Nutrition Now, Inc., 304 F3d 829, 838(9th Cir 2002). "The

23   laches analysis consists of two questions: (1) Was the plaintiff's delay in bringing suit

24   unreasonable? and (2) Was the defendant prejudiced by the delay?" Church & Dwight

25   Co., Inc. v. Mayer Lab., Inc., No. C-10-4429 EMC, 2011 WL 1225912, at *21, 2011

26   U.S. Dist. LEXIS 35969, at *71-72 (N.D. Cal. Apr. 1, 2011) (citing Internet Specialties

27   West, Inc. v. Milon-Digiorgio Enters., 559 F.3d 985, 989-993 (9th Cir. 2009)). If both of

28   ///

these questions are answered in the affirmative, laches may bar a plaintiff's claims. Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc., 603 F.3d 1133, 1139 (9th Cir. 2010).

Here, STV's delay was unreasonable because STV, as "neighbor" of the Reservation, was on notice for at least 20 years that the Tribe sued its Reservation for commercial purposes.  STV cannot now contend that such uses violate the 1906 judgment, when STV had constructive notice of the judgment, given that it was recorded in the Santa Barbara County recorder's office, yet STV has acceded to the Tribe's permissible commercial utilization of the property.  STV's efforts to characterize their harm as stemming from the Tribe's recent casino expansion falls flat, as STV blatantly seeks to apply its interpretation against the Tribe and the United States.

The United States and the Tribe would be prejudiced by the delay in bringing suit given the fact that the Tribe's federally recognized status as a tribal sovereign, with jurisdiction over its Reservation, has long been established and has long been a matter of public record.  The terms of the conveyances following the 1906 judgment, establishing a permanent Indian Reservation for the Tribe, resolved any question regarding the authority of the Tribe to reside on the Reservation and to put it to use, including commercial use. STV's action threatens to impair the United States' and the Tribe's ownership interests in the property, including an effort to remove its trust status, which places the property at risk of alienation.  This untimely disruption to trust title – which has been in place for a century, is precisely the type of effort the Ninth Circuit, sitting *en banc*, recently rejected in Big Lagoon Rancheria v. California, 789 F.3d 947 (9th Cir. 2015) as amended.  The Court should similarly reject STV's action here, since the time to challenge the establishment of the Reservation has long since passed, and STV has long since acceded to the Tribe's right to use its Reservation for gaming or other purposes.

### E.   Intervenor Lacks Standing to Maintain This Action

Article III of the U.S. Constitution limits the "judicial power" of the United States to consideration of actual "cases" and "controversies." Art. III, § 2, cl. I. The Supreme

Court has interpreted this language as requiring that plaintiffs demonstrate standing to bring a claim before the federal courts. <u>Warth v. Seldin</u>, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed. 343 (1975). To determine standing under Article III, a court must ask "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." <u>Id</u>. at 498-99 (citing <u>Baker v. Carr</u>, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)).

To establish standing under Article III a plaintiff must first have suffered an "injury in fact" - an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" "Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.' Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (quoting <u>Simon v. Eastern Ky. Welfare Rights Organization</u>, 426 U.S. 26, 41-42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)). These constitutional requirements constitute the "jurisdictional element of standing" that must be demonstrated in every case, and the court must satisfy itself "that this element exists even if no party to the action raises a doubt regarding its presence." <u>Bd. of Natural Res. v. Brown</u>, 992 F.2d 937, 945 (9th Cir. 1992). Moreover, "[t]he party invoking federal jurisdiction bears the burden of establishing these elements…." <u>Lujan</u> 504 U.S. at 561.

"An organization only has standing to sue on behalf of its members when: (1) the members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members[.]" <u>Defenders of Wildlife v. Perciasepe</u>, 714 F.3d 1317, 1323 (D.C. Cir. 2013).

1    Here, SVT is an organization, an LLC.  The proposed complaint in intervention

2    alleges no injury in fact; only speculative harms alleged by SVT, and those speculative

3    harms are not redressable because the judgment has been overtaken by subsequent

4    events and there is nothing to enforce.  The judgment resolved property ownership

5    interests – in the land and the waters of the creek --as between the Bishop and the Indian

6    defendants. The Bishop then conveyed his interest to the United States for the benefit of

7    the Tribe through a series of transactions. The United States is the owner of the Bishop's

8    interest, and owns the property and the waters to the creek for the benefit of the Tribe.

9    Even if there was an implied restrictive covenant created by the judgment – which there

10   was not – only the United States would have the standing to enforce it against the Tribe,

11   as the owner of the Property.  STV alleges that its members are "adjacent" landowners

12   and "neighbors" but it appears that Intervenor will be unable to prove this allegation.

13   Even if there was an implied restrictive covenant created by the judgment, and such

14   covenant survived the subsequent conveyances to the United States, STV offers no

15   evidence to support its standing to enforce such a covenant.

16   **F.    The Motion for Leave to File a Complaint in Intervention Should Be**

17   **        Denied As Untimely**

18   Whether intervention is sought as a matter "of right" or merely as "permissive," it

19   can be granted "only on timely motion."  F.R.Civ.P. 24(a) and 24(b).   "Timeliness is a

20   prerequisite to any claim for intervention under Rule 24."  United States v. British

21   American Tobacco Australia Services, Ltd., 437 F.3d 1235, 1238-39 (DC Cir. 2006).

22   Timeliness is a threshold question and is addressed to the sound discretion of the Court.

23   Yniguez v. State of Arizona, 939 F.2d 727, 731 (9th Cir. 1991).  The Court must consider

24   all the circumstances relating to  timeliness.  United States v. Alcan Aluminum, Inc., 25

25   F.3d 1174, 1181-82 (3rd Cir. 1994).  Here, as set forth in the sections above relating to

26   laches (Section IID) and standing (Section IIE), a review of all the circumstances leads

27   to the conclusion that the motion for leave to file a complaint in intervention should be

28   denied.

12

**IV.    CONCLUSION**

        The action should be dismissed and the motion for leave to file a complaint in intervention in Save the Valley II should be denied.

Dated: October 21, 2015                 Respectfully submitted,

                                        EILEEN M. DECKER
                                        United States Attorney
                                        LEON W. WEIDMAN
                                        Assistant United States Attorney
                                        Chief, Civil Division


                                          /s/
                                        JONATHAN B. KLINCK
                                        Assistant United States Attorney

                                        Attorneys for Real Party in Interest
                                        United States of America

1

<u>PROOF OF SERVICE BY MAILING</u>

2

I am over the age of 18 and not a party to the within action.  I am employed by the

3

Office of United States Attorney, Central District of California.  My business address is

4

300 North Los Angeles Street, Suite 7516, Los Angeles, California 90012.

5

On October 21, 2015, I served **NOTICE TO STATE COURT AND ALL**

6

**PARTIES AND THEIR ATTORNEYS OF RECORD OF REMOVAL OF CIVIL**

7

**ACTION** on each person or entity named below by enclosing a copy in an envelope

8

addressed as shown below and placing the envelope for collection and mailing on the

9

date and at the place shown below following our ordinary office practices.  I am readily

10

familiar with the practice of this office for collection and processing correspondence for

11

mailing.  On the same day that correspondence is placed for collection and mailing, it is

12

deposited in the ordinary course of business with the United States Postal Service in a

13

sealed envelope with postage fully prepaid.

14

Date of mailing: October 21, 2015.  Place of mailing: Los Angeles, California.

15

**Person(s) and/or Entity(ies) to Whom mailed:**

16

SEE ATTACHED MAILING LIST

17

I declare under penalty of perjury under the laws of the United States of America

18

that the foregoing is true and correct.

19

I declare that I am employed in the office of a member of the bar of this court at

20

whose direction the service was made.

21

Executed on: October 21, 2015 at Los Angeles, California.

22

23

Rossana Alvarez-Alcocer

24

25

26

27

28

14

## **MAILING LIST**

Richard I. Wideman, Esq.
Frederick's Court #232
485 Alisal Road
Solvang, CA  93463

Matthew Clark, Esq.
Dugan P. Kelley, Esq.
Matthew N. Mong, Esq.
Christman, Kelley & Clark, PC
1334 Anacapa Street
Santa Barbara, CA  93101

Paul Gaspari, Esq.
Weintraub, Tobin, Chediak, Coleman & Grodin Law Corporation
475 Sansome Street, 18th Floor
San Francisco, CA  94111

Matthew Benedetto, Esq.
Wilmer Hale
350 South Grand Avenue, Suite 2100
Los Angeles, CA  90071